IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KENT BERNBECK, KELSEY BERNBECK, CRAIG BERNBECK, JONATHAN ALLEY, and JOE KINGSLEY, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) |
| v. | ) |
| JOHN A. GALE, Nebraska Secretary of State, and NANCY A. MORFELD, City Clerk of the City of Stanton, Nebraska, | )<br>)<br>)<br>) |
| Defendants. | ) |

4:10CV3001

MEMORANDUM AND ORDER

This matter is before the court following a nonjury trial held December 21, 2010. This is an action for declaratory and injunctive relief for deprivation of rights brought pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202.  The plaintiffs allege deprivation of First Amendment rights in connection with enforcement of the State of Nebraska's statutes governing petitions and initiatives.  The plaintiffs challenge the constitutionality of the local residency requirement for chief sponsors of petitions in Neb. Rev. Stat. § 18-2515, the limitations on signatures by qualified electors in Neb. Rev. Stat. § 18-2524, the limitations on functioning as qualified electors in Neb. Rev. Stat. § 18-2510, the definitional restrictions found in Neb. Rev. Stat. § 32-110, the ban on per-signature payments to circulators of petitions in Neb. Rev. Stat. § 32-630(3)(g), and the state residency requirement for circulators found in Neb. Rev. Stat. § 32-629.  The plaintiffs seek a declaration that the statutes are unconstitutional and an order enjoining their enforcement.

**PARTIES**

Plaintiff Kent Bernbeck is a resident of Stanton County, Nebraska. Kent Bernbeck is not a resident of the City of Stanton, Nebraska. Kelsey Bernbeck is a resident of Stanton County, Nebraska and daughter of Kent Bernbeck. She was 17 years old at the time in question of this lawsuit. Craig Bernbeck, at all relevant times, resided in Brown County, Nebraska. Plaintiff Joe Kingsley resided both in the City of Stanton as well as Stanton County, Nebraska. Plaintiff Jonathan Alley resided outside the state of Nebraska. Defendant John Gale is the Secretary of State of the State of Nebraska. Defendant Nancy A. Morfeld was at all pertinent times the City Clerk of the City of Stanton, Nebraska.[1]

**BACKGROUND**

Plaintiffs Kent and Kelsey Bernbeck wanted improvements (addition of a slide in the pool) to the municipal swimming pool in the City of Stanton. The city council would not make the improvements. The plaintiffs then began a municipal initiative petition drive to place the proposal before the city council and, if needed, at the next municipal election. The plaintiffs gathered signatures on their petition from August through November, 2009. The petitioners needed 147 valid signatures, and they collected 176 signatures. Seventy-nine of these signatures were declared invalid by the City Clerk. The signatures collected by plaintiff Jonathan Alley were deemed invalid because Mr. Alley is not a resident of Nebraska, and thus not an elector under the provisions of Neb. Rev. Stat. §§ 18-2517 (2007), § 32-629(2) and § 32-110 (2008). The Clerk of Court found the signatures gathered by plaintiff Kelsey Bernbeck were invalid because at the time she gathered the

---

[1] The parties agree that defendant Morfeld is sued only in her official capacity. They further agree that she followed the law and did nothing outside of the legal requirements.

signatures she was under age and not an elector under these same statutory sections. The parties have agreed that had the City Clerk not declared the 79 signatures gathered by plaintiffs Jonathan Alley and Kelsey Bernbeck invalid, there would have been sufficient valid signatures to place the measure on the ballot. The clerk also ruled that plaintiff Kent Bernbeck could not act as a chief sponsor because, as a nonresident of the City of Stanton, he was not a qualified elector of the municipal subdivision. *See* Neb. Rev. Stat. § 18-2515(2). Kent Bernbeck alleges he wanted to pay Craig Bernbeck on a per-signature basis, but such method of payment is prohibited under Neb. Rev. Stat. §§ 18-2517 and 32-630(3)(g). The signature of Joe Kingsley was deemed invalid, as it had been signed by petition circulator Kelsey Bernbeck who is under age. See Filing No. 38, Stipulation of Facts, by plaintiffs and defendants.

## DISCUSSION

### A. Residency restrictions

The court recently decided the case of Citizens in Charge v. Gale, 4:09CV3255, Memorandum and Order dated August 30, 2011, Filing No. 111. In that case this court determined that the residency requirement set forth in Neb. Rev. Stat. § 32-629(2), which states "(2) Only an elector of the State of Nebraska shall qualify as a valid circulator of a petition and may circulate petitions under the Election Act" is unconstitutional and this court enjoined enforcement of that provision. That holding is applicable in this case and dispositive of the residency requirement issue presented by the plaintiffs.

### B. Sponsor

Plaintiffs assert in their amended complaint that Neb. Rev. Stat § 18-2515(2), which requires that a chief sponsor of a local petition be an elector (resident) of the municipal

subdivision to be affected by the initiative proposal, violates the free speech, equal protection and due process provisions of U.S. Const, amend. I and XIV.

The court first notes that the plaintiffs offer no significant argument and offer no caselaw in support of this position. The Supreme Court has generally, although not specifically, addressed this issue. In *Timmons*, the Supreme Court stated:

> When deciding whether a state election law violates First and Fourteenth Amendment associational rights, we weigh the "'character and magnitude'" of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary. *Burdick, supra, at 434* (quoting *Anderson v. Celebrezze,* 460 U.S. 780, 789, 75 L. Ed. 2d 547, 103 S. Ct. 1564 (1983)). Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest. Lesser burdens, however, trigger less exacting review, and a State's "'important regulatory interests'" will usually be enough to justify "'reasonable, nondiscriminatory restrictions.'" *Burdick, supra,* at 434, 112 S. Ct., at 2063 (quoting *Anderson, supra* at 788; *Norman, supra,* at 288-289 (requiring "corresponding interest sufficiently weighty to justify the limitation"). No bright line separates permissible election-related regulation from unconstitutional infringements on First Amendment freedoms. *Storer, supra, at 730* ("No litmus-paper test . . . separates those restrictions that are valid from those that are invidious. . . . The rule is not self-executing and is no substitute for the hard judgments that must be made").

*Timmons v. Twin Cities Area New Party,* 520 U.S. 351, 358-59 (1997). As stated in *Jaeger*, "[s]evere burdens on speech trigger an exacting standard in which regulations must be narrowly tailored to serve a compelling state interest, whereas lesser burdens receive a lower level of review." *Initiative & Referendum Institute v. Jaeger,* 241 F.3d 614, 616 (8th Cir. 2001). Defendants argue that the purpose of this provision is to require at least one local person to support a local measure, in this case issues dealing with a swimming pool. The statute only requires one such sponsor, although there may be up to three sponsors. The defendants argue that the reason for passage of this law was to

assure that local support was behind such a measure.  However, the court notes, as the court did in *Lux*, that when the required number of signatures required under law is met, the issue of local support is obvious.  *Lux v. Judd*, 2011 WL 2624173 *6 (4th Cir. July 6, 2011); *see also Molinari v. Bloomberg*, 564 F.3d 587, 598 n.8 (2d Cir. 2009) (same).  Accordingly, for the reasons set forth in *Citizens v. Gale* and as stated in *Lux* and *Molinari*, the court likewise finds this portion of the statute unconstitutional.

### *C.  Age restrictions*

Plaintiffs contend that Kelsey Bernbeck should be able to circulate petitions even though she was under the statutorily required age of 18 at all relevant times.  The court agrees with the defendants that the age requirement does not violate any constitutional provisions of the United States Constitution.  Plaintiffs cite no caselaw in support of this argument.  Although the Court in *Buckley* did not specifically decide this issue, it did state the following:  "As the Tenth Circuit recognized in upholding the age restriction, the six-month limit on circulation, and the affidavit requirement, States allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process, as they have with respect to election processes generally."  *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 191 (1999).  As stated by the Eighth Circuit:  "[W]e agree with the state that it is particularly appropriate to apply a deferential standard of review to age requirements affecting young people because such requirements do not result in an absolute prohibition but merely postpone the opportunity to engage in the conduct at issue."  *Stiles v. Blunt*, 912 F.2d 260, 265 (8th Cir. 1990).  As also discussed in *Buckley*, the State of Nebraska is using the age of 18 as the approximate time for maturity.  *Buckley*, 525 U.S. at 642, n.10.  The Eighth Circuit has further stated:  "The

minimum age requirement also does not affect a fundamental right." *Stiles*, 912 F.2d at 265. Based on this rational and applying the *Stiles* analysis, the court finds the age requirement has a rational basis and meets constitutional muster.

### D. Defendant Morfeld - § 1983 claim

Defendant Morfeld is sued in her official capacity as the City Clerk of the City of Stanton. She argues that the statutes in question in this lawsuit are constitutional. However, in the event that they are found unconstitutional, she contends there can be no liability against her as her conduct was not taken pursuant to a policy or custom of the City of Stanton. Instead, argues Ms. Morfeld, she argues that she simply followed the Nebraska state laws. The municipality cannot be held liable under § 1983, contends Morfeld, for an action that was required by state law.

A § 1983 claim against a government employee in his or her official capacity is effectively a claim against the government entity. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). In order to establish liability against a government entity under § 1983, the plaintiff must plead and prove that the alleged violation of the plaintiff's rights was attributable to a "policy or custom" adopted by the entity. *Monell v. New York Dept. of Social Services*, 436 U.S. 658 (1978). In *Monell*, the Supreme Court held that:

> Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such custom has not received formal approval through the body's official decision making channels . . . .

> On the other hand, the language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort . . . .

*Monell*, at 690-91 (emphasis added). The Supreme Court has further stated:

> . . . [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bryan County v. Brown*, 520 U.S. 397, 404 (1997). *See also Vives. v. New York*, 524 F.3d 346 (2d Cir. 2008) (distinction between state laws that a municipality is authorized to enforce versus those that it is required to enforce); *Bockes v. Fields*, 999 F.2d 788, 791 (4th Cir. 1993) (same); *Bethesda Lutheran Home and Services, Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998) (same); *Whitesel v. Sengenberger*, 222 F.3d 861, 872 (10th Cir. 2000) (same).

This court agrees with the defendant Morfeld's arguments. Defendant Morfeld acted pursuant to Nebraska statutes regarding procedures set forth for the petition process, circulation of the petitions, and signature verification. The municipality and Morfeld were required to enforce the statutes. There was no choice in this regard. There is no evidence that any of defendant Morfeld's actions were pursuant to a policy or custom of the municipality. Further, it is clear that Morfeld had no culpability in this regard. The law required her to enforce the law. Accordingly, the court finds there is no liability as to defendant Morfeld.

### E. *Per-signature payment*

Plaintiffs contend that the prohibition of payment of circulators on a per-signature basis which kept plaintiff Kent Bernbeck from paying plaintiff Craig Bernbeck violates the free speech, equal protection and due process provisions of the United States Constitution, amend. I and XIV. See Neb. Rev. Stat. § 32-630(3)(g). This section states: "[n]o person shall . . . [p]ay a circulator abased on the number of signatures collected." *Id.*

The court notes that *Meyer* held that an absolute ban on payment of petition circulators is unconstitutional. *Meyer v. Grant*, 486 U.S. 414 (1988). Three United States Court of Appeals decisions have upheld per-signature payment prohibitions challenged on First Amendment grounds. *Jaeger*, 241 F.3d 618; *Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006); *Person v. New York State Bd. of Elections*, 467 F.3d 141, 143 (2d Cir. 2006).

The court finds that *Jaeger* is dispositive of this issue. The plaintiffs in *Jaeger* presented this exact issue, and the Eighth Circuit determined that evidence existed to show past fraud and abuse in the signature gathering process tied to per-signature payments. *Jaeger*, 241F.3d at 618. This same evidence exists in the Nebraska case, argue defendants. For example, during the Committee Hearing on LB 39, Lynn Rex, representing the Nebraska League of Municipalities, testified that the per-signature payment ban was "one of the most important elements" of the bill. Filing No. 38, Attach 10, Ex. 7, p. 8. Ms. Rex, discussing recent petition efforts and testimony at an interim study hearing on the petition process in Nebraska, stated:

> In some recent efforts across the state of Nebraska, you would go to, whether it's a HyVee store, of Super Target, or Super Wal-Mart, you can name the place, or a DMV, and instead of having basically a petition there and would you like to sign a petition or not, stacks and stacks of petitions, and sign, and people were just asked to sign and sign and sign. And at the

interim study hearing, those of you that were there during the interim study hearing, will recall, as you did, Senator Aguilar, that in fact what occurred is there were people that testified at the interim study hearing that individuals signed affidavits thinking they were signing one thing, when in fact it was something else.

. . . .

There were individuals that testified at the interim study hearing that they were asked to sign an . . . they found out later, when they went back, that they [had] signed petitions that were not on the subject matter that they thought they were signing. And part of that is because people were being paid, basically, on a signature basis. They were getting as many signatures as they could get. Individuals, I actually had some family members in town and in one event, and they were told, well, there's not time for them to check now, I'm just getting paid on a per signature basis, they're not checking, sign, sign, sign.

. . . .

We think what is in this bill is reasonable. We think certainly making it clear to folks that they're going to take the time, there will be no incentive to see how fast they can get signatures because they're being paid on an hourly basis, they would have no reason to try to rush people through it. They would have no reason to chase people down in parking lots and, as the film on Channel 7 has, basically has a mother who is trying to drag two kids to get into their car and try to get away from somebody, and he puts his hand on her car door so she can't get in, you don't have that when you're getting paid on an hourly basis would be my thought. I would hope not, I certainly would hope not. So I think that's a compelling reason for doing it.

Filing No. 38, Attach.10, Ex. 7, pp. 8-9. Further, Senator Shimek stated:

> [T]he bill was actually put together by my office and the Office of the Secretary of State, who came in and testified that he believed the problems that were experienced in the petition drive two years ago were problems that had to do with people being too young, . . . people not being residents of Nebraska, and people who were not . . . who did not really care about the petition drive itself.

Filing No. 38, Attach. 10, Ex. 7, pp. 128-129.

Testimony at the hearing included stories of petitions left unattended or circulators telling potential signers they didn't have time to explain the petition since there were a lot of people who would sign without lengthy explanation.

9

> One possible way we decided to avoid this was to prohibit payment per signature and require an hourly wage instead.

Filing No. 38, Attach. 10, Ex. 7, p. 46.  Further, as in *Jaeger*, the plaintiffs have presented no evidence which would establish that the ban on per-signature payment burdens their ability to gather signatures.  Accordingly, the court finds *Jaeger* is controlling and rejects plaintiffs' claims in that regard.

THEREFORE, IT IS ORDERED:

1.  The Nebraska residency requirement for petition circulators found in Neb. Rev. Stat. §§ 18-2517 (2007), § 32-629(2) and § 32-110, and Neb. Const. art. VI, § 1 violate the plaintiffs' constitutional rights to petition the government or to engage in initiative petitions as set forth in *Citizens in Charge v. Gale*, 4:09CV3255, Memorandum and Order dated August 30, 2011, Filing No. 111.

2.  The Nebraska age requirement for petition circulators found in Neb. Rev. Stat. §§ 18-2517 (2007), 32-629(2) and 32-110 and Neb. Rev. Stat. § 32-630 and Neb. Const. art. VI, § 1 does not violate the plaintiffs' constitutional rights.

3.  The prohibition against paying petition circulators on a per-signature basis found in Neb. Rev. Stat. §§ 18-2517 and 32-630(3)(g) does not violate the plaintiffs' constitutional rights.

4.  The requirement that a chief sponsor of a local petition be an elector (resident) of the municipal subdivision to be affected by the initiative proposal found in Neb. Rev. Stat. § 18-2515(2) violates the plaintiffs' constitutional rights.  The State of Nebraska is enjoined from enforcing this provision.

5.  A separate judgment will be entered in conjunction with this Memorandum and Order.

DATED this 30th day of August, 2011.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.